THE STATE EX REL. O'DONNELL, Appellant, vs. BENZENBERG and others, Commissioners, etc., Respondents.

*November 19, 1900 — January 8, 1901.*

*Municipal corporations: Public works: Contracts: Failure to file plans before advertising: Rights of accepted bidder: Mandamus.*

Where no "plan or profile of the work to be done" had been placed on file, as required by the city charter of Milwaukee (sec. 9, subch. V, ch. 184, Laws of 1874), at the time of advertising for proposals for a public work or improvement, the board of public works will not be compelled by *mandamus* to enter into a contract for the work, even though the council has accepted a proposal therefor and directed the board to make the contract.

APPEAL from an order of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

For the appellant the cause was submitted on the brief of *O'Connor, Hammel & Schmitz.* They contended, *inter alia,* that the proposal made by Crilley and *O'Donnell,* and the acceptance thereof by the common council, constituted a contract. *Adams v. U. S.* 1 Ct. Cl. 192; *Wiles v. Hoss,* 114 Ind. 371; *Matter of Protestant Episcopal School,* 58 Barb. 161; *People ex rel. C. P. R. Co. v. Sup'rs of San Francisco,* 27 Cal. 655; *People ex rel. Taylor v. Brennan,* 39 Barb. 522; *Smalley v. Yates,* 36 Kan. 519. This proceeding is simply to compel the board to execute and deliver to the party entitled thereto the written evidence of the contract entered into when the common council accepted the proposal, as aforesaid. The relator is not seeking to enforce any duty on the part of the board involving their discretion, or seeking to control their discretion.

For the respondents there was a brief by *Carl Runge,* city attorney, and *C. H. Hamilton,* of counsel, and oral argument by *Mr. Hamilton.* They argued, among other things, that the proposals provide not only for the collection of the gar-

bage, but its disposal within the city limits by the Holthaus process, which involves the construction of a large building and crematory, which the contractor was willing to dispose of to the city after five years' usage for $165,000. Certainly plans as well as specifications are necessary. *Houghton v. Burnham*, 22 Wis. 301; *Ricketson v. Milwaukee*, 105 Wis. 591. All persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or its officers to make the contract, and a contract beyond the scope of the corporate power is void, although it be under the seal of the corporation. *Marsh v. Fulton Co.* 10 Wall. 676; *Leavenworth v. Rankin*, 2 Kan. 357; *Horn v. Baltimore*, 30 Md. 218; *Bridgeport v. Housatonuc R. Co.* 15 Conn. 475, 493; *Haynes v. Covington*, 13 Smedes & M. 408; *Laft v. Pittsford*, 28 Vt. 286; *Dill v. Wareham*, 7 Met. 438; *Branham v. San Jose*, 24 Cal. 585, 602. Persons will not be protected on contracts with a public corporation which are not made according to law. *Mackey v. Columbus*, 71 Mich. 227.

CASSODAY, C. J. This is a proceeding for *mandamus* to compel the board of public works of the city of Milwaukee forthwith to fix a time and place when and where they will meet and receive from the relator a good and sufficient bond, as provided by the charter, after having first given to the relator six days' notice of the time and place of such meeting, and that upon the reception and approval of such bond in the sum of $54,000 the board of public works sign the contract theretofore agreed upon by and between the relator and the board of public works, and permit the relator to proceed forthwith with the execution of the contract.

It appears from the record that May 24, 1897, the relator and one John J. Crilley proposed to the board of public works. to furnish all the material and do all the work according to the plans and specifications on file with the board for the collection, transportation, and complete and sanitary disposal of

all the garbage and dead animals collected within the city limits for the period of five years at the prices annually therein named; that the manner or method so proposed to be used was therein stated to be known as the "Holthaus System;" that July 7, 1897, the common council adopted a resolution accepting such proposal, and directed the board of public works to enter into a contract in accordance with the provisions of the notice to bidders and specifications on file in their office with the relator and Crilley for such collection, transportation, and disposal within the city limits by the Holthaus system or process for a period of five years from and after ninety days after the date of the execution of the contract; that July 7, 1897, the amount of the bond was fixed by the board, and thereupon the board, city attorney, and the relator and Crilley agreed upon the terms of a blank agreement of the tenor and effect indicated, to be executed by the relator and Crilley as parties of the first part, and by the commissioners of the board of public works, in behalf of the city, as parties of the second part, and to be countersigned by the comptroller; that March 8, 1898, Crilley, in consideration of $1 and other good and valuable considerations, assigned unto the relator, *O'Donnell*, all and singular his claim, right, title, and interest in and to and by virtue of such proposal to and acceptance by the common council, with full power to enter into any contract with the city or board of public works in his own name, with the same effect, so far as Crilley was concerned, as if they had jointly entered into the contract in pursuance of such proposal; that about the same time the relator notified the board of public works of such assignment to him by Crilley; that on or about April 9, 1898, the relator notified the common council that — he and Crilley being the lowest bidders for the performance of the job by the "Holthaus system or process," which had previously been adopted by the common council — Crilley had, without his knowledge or author-

ity, submitted to the common council a proposition request-
ing them to release and relieve Crilley and the relator and
their bondsmen from all obligations on their bond accom-
panying their bid; that the common council neglected and
refused to take action thereon.

June 8, 1898, an alternative writ of *mandamus* was issued
for the purpose indicated. Thereupon the several defend-
ants moved the court to quash the writ for the reason that
such petition failed to show facts entitling the relator to
such writ. After the hearing of such motion, the trial court,
on June 27, 1898, granted the same, and quashed the alterna-
tive writ, and dismissed the petition therefor. From that
order the relator brings this appeal.

It was held by this court at an early day, and has since
been repeatedly sanctioned, in effect, that a peremptory
writ of *mandamus* will only issue where there is a specific
legal right to be enforced, or a positive duty to be performed,
and there is no other adequate legal remedy. *State ex rel. Pfis-
ter v. Mayor of Manitowoc,* 52 Wis. 427, and cases there cited.
In the case at bar counsel for the defendants contend that
the petition for the writ fails to state that the city comp-
troller countersigned the resolution accepting the proposal
of the relator and Crilley; that it also fails to state that the
mayor approved the resolution of the common council ac-
cepting such proposal; that it also fails to state that the city
attorney approved the bond accompanying such proposal as
to form and execution; that it also fails to state that there
were funds in the city treasury available for the purpose of
carrying out such contract; that it also fails to state that
the relator and Crilley procured and tendered the bond re-
quired by the board of public works; and that it also fails
to state that the board of public works had provided any
general plans for the information of bidders. In support of
the contention that such failures bar the relator's right to a
*mandamus* counsel cite the following sections and subchap-

The State ex rel. O'Donnell vs. Benzenberg and others.

ters of the charter: Sec. 13, ch. III; secs. 5, 7, ch. IV; secs. 2, 9, 10, 13, 17, 20, 23, 24, ch. V.

We do not deem it necessary to consider all the questions thus presented. One of these sections provides that: "Whenever any public work or improvement shall be ordered by the common council, the said board shall advertise for proposals for doing the same — a plan or profile of the work to be done, accompanied with *specifications* for doing the same, or other appropriate and sufficient description of the work required to be done, and of the kinds and quality of material to be furnished, *being first placed on file* in the office of said board for the information of bidders and others. . . . All proposals shall be sealed and directed to said board, and shall be accompanied with a bond to the city; . . . such bond and sureties to be approved by the board *previous* to the opening of the accompanying bids or proposals, and shall be conditioned that such bidder will execute and perform the work for the price mentioned in his proposals and according to the *plans and specifications on file* in case the contract shall be awarded to him." Sec. 9, ch. V. The manifest purpose of these provisions was to require such "plan or profile" with such "specifications" to be so filed for the information of bidders prior to advertising for such proposals. The petition in the case at bar recites, in substance, such statutory requirements, but fails to allege that any such "plan or profile" was ever filed. As stated by my brother BARDEEN in a recent case, the common council "alone had authority to take the initial step. It was its duty to procure the proper plans and specifications for any work proposed." *Ricketson v. Milwaukee*, 105 Wis. 598. The petition refers to the proposal of the relator and Crilley "in accordance with the specifications therefor on file." This proposal is dated several days after the advertisement, and speaks of "plans and specifications on file," but further states that, "The manner or method proposed to be used is known as

the 'Holthaus System.' Plans and specifications *are herewith* attached." The proposed blank contract repeatedly speaks of "specifications on file," but makes no mention nor reference to any "plan or profile" on file or otherwise. According to the petition, the resolution of the common council adopted July 7, 1897, accepting such proposal of the relator and Crilley, directed the "board of public works to enter into a contract, in accordance with the provisions of the notice to bidders and the specifications on file in their office, with" the relator and Crilley, to dispose of such garbage "by the Holthaus system or process," but is silent as to plans or profile. The case comes squarely within the condemnation of this court in the case last cited. The opinion of Mr. Justice BARDEEN in that case completely covers this branch of this case. Pages 597–603. So, in this case as in that: "If it be admitted that the projected scheme contemplated the use of a patented process, the council had the undoubted right to authorize the board to secure the privilege of using it without resort to an advertisement for bids. Such, however, was not their procedure. . . . The indefinite character of the specifications and the absence of plans had the effect of stifling all competition. Each bidder was called upon to make a proposal, resting largely upon his own judgment, with absolutely no guide as to details. No one could tell which was the lowest bid, because no two bids would be on the same basis. That fact alone condemns the action taken. Of course, the court must take into consideration what was sought to be accomplished. At the same time it must consider that it can only be accomplished in the way pointed out by the charter."

We must hold that the alternative writ of *mandamus* was properly quashed.

*By the Court.*— The order of the superior court of Milwaukee county is affirmed.