(86 App. Div. 567.)

### JOHNSON et al. v. CITY OF ALBANY.

(Supreme Court, Appellate Division, Third Department. September 9, 1903.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—DISPUTES—ARBITRATION—DELAY OF ARBITRATORS—RIGHT TO SUE.

   Where a contract for the construction of a conduit provided that any disputes between the parties should be submitted to the city engineer, whose decision, as approved or modified on appeal by the city superintendent of waterworks, and on appeal from his decision by the board of water commissioners, should be binding, and, an appeal having been taken to the board of water commissioners, the latter unreasonably delayed determining the same from May 26th until September 5th, the contractor was relieved from such provision of the contract, and was entitled to sue at law to recover the amount alleged to be due.

2. SAME—TRIAL—OBJECTION TO PLEADINGS—MOTION TO DISMISS—FAILURE TO RENEW—WAIVER.

   Where a motion to dismiss plaintiff's complaint for want of facts, made at the opening of the case, was denied at the time, "with leave to renew," defendant's failure to move for a dismissal on such ground either at the close of the plaintiff's case or at the close of all the evidence constituted a waiver of such objection, so far as the court would be authorized, if the evidence warranted a judgment, to amend the complaint to conform thereto.

3. SAME—AMENDMENT ON APPEAL.

   Where the evidence at the trial warranted the judgment, and the trial court might have amended the complaint to conform thereto, such amendment may be made on appeal to the Appellate Division.

4. SAME—EXTRA WORK.

   A contract for municipal improvements provided that the contractor should perform all the work contracted for, and that any alteration ordered in writing by the engineer should be made as directed, and, when it increased the amount exhibited at the time of letting the contract, such increase should be paid for at the rates provided for the same class of work. Held, that where the engineer directed, in writing, that a ditch provided for should be sheathed, which necessitated extra excavation and extra concrete, the contractor was entitled to extra compensation therefor.

5. SAME.

   Where a contract for the construction of a city conduit prohibited the contractor from varying the terms of the specification, except on the written order of the city engineer, the contractor was not entitled to recover extra compensation for laying the conduit at a greater depth than that specified, in the absence of such written order.

6. SAME.

   A contract for the construction of a city conduit required the contractor to keep the excavation clear from water, from whatever source, while the pipe was being laid and surrounded by concrete, and until all danger of damage from water was passed. It also declared that the contractor should be responsible for all materials or work, and should make good, at his own cost, any injury which said materials or work might sustain, from any cause whatever, before the acceptance thereof. Held that, where the pipe was damaged by a freshet during the continuance of the work, the contractor was not entitled to recover for labor performed in repairing the damage, as extra work.

Appeal from Supreme Court, Albany County.

Action by Eugene C. Johnson and others against the city of Albany. From a judgment in favor of plaintiffs on a referee's report, defendant appeals. Reversed.

The action is brought to recover for work performed and materials furnished to the city of Albany in putting in a steel conduit, 4 feet in diameter,

from the filtration beds of the city to the pumping station on Montgomery street. The length of the conduit was to be 7,900 feet. It extended across the flats for about 500 feet, then in the bottom of the Erie Canal, 5,253 feet, and then 1,937 feet in Montgomery street. The plaintiffs, being the lowest bidders, were awarded the contract. The work was performed and accepted by the city, and certain payments made thereupon as the work progressed. This action was brought for a balance claimed to be due upon the contract; and the referee has found that upwards of $45,000 remains due and unpaid, and for that sum, with interest and costs, judgment has been entered, from which this appeal is taken. Further facts appear in the opinion.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Arthur L. Andrews, for appellant.

John S. Wolfe (Louis S. Carr, of counsel), for respondents.

SMITH, J. This judgment is assailed upon three principal grounds: First, that, under the contract under which the work was performed, the engineer was made the sole arbiter of all questions arising thereunder, and that the plaintiffs are conclusively bound by his adverse decision upon their claims; second, that the complaint does not state facts sufficient to constitute a cause of action; third, that, aside from the stipulation in the contract to submit all claims to the engineer for arbitration, the evidence upon the trial does not justify the conclusion of the referee.

1. By the third paragraph of the contract it is agreed—

"That the engineer shall in all cases determine questions in relation to the work and the construction thereof; and he shall in all cases decide every question which may arise relative to the execution of this contract, on the part of the said contractor; and his estimate and decision shall be final and conclusive upon said contractor, and such estimate and decision in case any question shall arise shall be a condition precedent to the right of the contractor to receive any money under this contract, and a condition precedent to the commencement of any action by the said contractor to recover any moneys under this contract, or any damages on account of any alleged breach thereof."

By paragraph 103 it is agreed—

"That the engineer shall in all cases determine the amount or quantity of the several kinds of work which are to be paid for under this contract and the amount of compensation to be paid therefor. * * *"

By paragraph 115 of the contract it was agreed:

"In case of any misunderstanding or disagreement between the engineer and the contractor in regard to the making up of the final accounts of the work of said contract, the said accounts shall be referred by either of said parties to the superintendent of the waterworks, who shall examine the same and decide whether it is made up according to the strict terms of the specifications and contract, and just and reasonable amounts and prices for all work done and materials that may have been furnished, and for all extra necessary work that shall have been ordered done, by the party of the first part; and his decision shall be final and conclusive, subject, however, to revision by the board of water commissioners before the same is paid."

Pursuant to these provisions of the contract, the engineer did make up his final estimate, by which there was found due to the plaintiffs the sum of about $12,000. Thereupon an appeal was taken to the superintendent of the waterworks, who examined the same, and ap-

proved the same, with some slight modifications. Thereupon an appeal was taken to the board of water commissioners, before whom the matter was presented upon the 26th of May, 1899. No action was taken thereupon prior to September 5, 1899, when this action was brought. The referee has found that the board of water commissioners unreasonably delayed action upon said appeal, and that such delay authorized the commencement of this action.

It is urged, however, that the attorney for the plaintiffs requested delay. There were six meetings of the board between the meeting of May 26th, when this matter was presented, and September 5th, when this action was brought. There is no proof that a single day's delay within that period was caused by the act of the plaintiffs or their attorney. It may be that the delay from September 5th to October 17th, when the board did act, was caused by the request of the plaintiffs' attorneys. Unless the delay, however, from May 26th to September 5th, was unreasonable, this action cannot be maintained.

The referee has found this delay to have been unreasonable. We are inclined to think this finding is sustained. It is a matter of serious importance to these contractors that the amount of their claim be determined, and complete inaction from the 26th of May to the 5th of September shows such a disregard of their rights in the premises as may well justify the condemnation of the court.

Under the different sections of the contract, read together, it appears that submission was not alone to the engineer, but by his judgment, as approved or modified upon appeal by the superintendent of the waterworks, and, upon appeal from his decision, by the board of water commissioners, the plaintiffs were to be bound. His decision was, in substance, approved by the superintendent. If the board of water commissioners, however, upon an appeal from the superintendent, should refuse absolutely to consider the plaintiffs' appeal, it is clear that the plaintiffs cannot be deprived of their right of action. Moreover, if that board, through unreasonable delay, has refused to act, the plaintiffs were not bound to wait upon their convenience. By the unreasonable delay of the city itself, acting through its water board, the remedy provided for in the contract has been made ineffective, whereupon the court will intervene to give the plaintiffs such rights as they may establish by their proofs.

2. The defendant further urges that the complaint does not state facts sufficient to constitute a cause of action. At the opening of the case a motion was made by the defendant's attorney to dismiss the complaint as not stating facts sufficient to constitute a cause of action. This motion was denied at that time, with leave to renew. At the end of the plaintiffs' evidence a motion was made for a dismissal of the complaint, but the insufficiency of the pleading was not included as one of the grounds upon which the motion was made. Moreover, the motion itself recognized the right of the plaintiffs to some recovery in the action. At the end of the case a motion was made to dismiss the complaint, but not upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The evidence was nowhere objected to as not within

the pleadings. After a denial of the motion at the beginning of the case, with leave to renew, the failure to include this ground as one of the grounds for the dismissal of the complaint in motions later made, and the failure to object to evidence introduced as not within the pleadings, would seem to constitute a waiver of that objection, so far that the court would be authorized, if the evidence upon the trial warranted the judgment, to amend the complaint to conform thereto. And this may be done by this court upon this appeal, if necessary to sustain the judgment. It is unnecessary, therefore, to determine whether the complaint states sufficient ground for disregarding the determination of the engineer upon the several matters involved herein, and for appealing to the court in disregard of the tribunal stipulated in the contract.

3. The issue is finally reduced to the contention of the defendant that the amount of the recovery is in excess of that shown by the evidence to be the plaintiffs' right. The consideration of this branch of the case requires examination of the different items. One item, and it appears to be the main item upon which recovery has been allowed, is for extra excavation made and extra concrete furnished by reason of the enlargement of the ditch, claimed to be necessary by the order of the engineer that the same should be sheathed. The original plans called for a ditch six feet wide at the top of the pipe. This pipe was about four feet in diameter. This trench was for almost the entire length built some part of it under the water line of the Hudson river. The dirt was therefore water-soaked and loose. It became necessary, in order to properly lay this pipe, that the trench be sheathed so as to sustain the walls of the trench while the pipe was placed. This sheathing was put in by placing two-inch planks against the earth. To hold these planks in position, three longitudinal braces were used, four inches by six inches, and outside of these longitudinals were placed vertical beams, six inches by six inches. This was shown to be the usual way of sheathing a trench. It is easily seen, however, that with this sheathing, thus placed and supported, the six-feet ditch would be narrowed to four feet or less; and in practical working it was found impossible, after the sheathing was thus placed, to lay the pipe therein. It was found necessary to enlarge the ditch one foot where the sheathing was put in, and in some places, where larger timbers must be used, the ditch was necessarily enlarged two feet. This, of course, required additional excavation, and an additional amount of concrete, with which the plaintiffs were required to fill up the ditch to a point above the line of the pipe as laid. Claim for this extra excavation and extra concrete was disallowed by the engineer on the ground that the contract required that the trench should be six feet wide, and all excavation should be made in accordance with the lines and grades given by the engineer; and the engineer states "that the contract is perfectly clear, and leaves me no option in computing quantities." By section 89 of the contract, the contractor agreed to—

"Perform all the work contracted for as specified in this contract, but any alteration in the form, dimensions, location or manner of doing the work ordered in writing by the engineer shall be made as directed, and when the

several quantities of work or any of them, from this or any other cause that may enhance the cost of the work, shall be increased beyond the amount or amounts exhibited at the time of the letting of the contract, such increase shall be paid for at the rates herein provided for the same class of work. * * *"

After about 2,200 feet of this ditch had been dug, the engineer, in writing, ordered the ditch thereafter to be sheathed. Because the ditch could not be sheathed without the increased width claimed to have been made by the contractor, the direction to the contractor to increase the width of the trench, so far as might be necessary to place that sheathing, was necessarily implied in the order for the sheathing. This was increased work made necessary by an alteration directed by the order of the engineer in writing, and, within the explicit terms of the contract, the contractor was entitled to extra compensation therefor, as well as for the extra concrete which he was required to place therein by reason of the increased width of the ditch. It is certainly just that the city should pay for the work actually done at the rate stipulated. It is claimed by some that iron supports might have been put in against the sheathing, and thus a part of the extra excavation have been prevented. But upon the proof the method adopted was the ordinary method of sheathing. Just how much extra excavation or extra concrete were required by reason of the alteration made by this order of the engineer, we are unable to determine. That must remain a question of fact to be determined upon the proofs by the trial court, subject to modification if determined against a preponderance of evidence.

In the plaintiffs' claim for extra excavation is included a claim for excavation of a foot and one-tenth greater than is specified in the contract. This is claimed, in the first place, to have been necessary by reason of the nature of the soil in the bottom of the canal; that there was there accumulated some soft material, which is called "silt," which was in fact excavated, but that the engineer required the excavation of the full amount as called for by the contract below the hard bottom of the canal, not including this so-called silt, which was a part of the surface, and which had to be excavated. This claim—extra excavation for extra depth—seems, however, to be made for excavation the entire length of the conduit, which included excavation in Montgomery street, and where this silt could not have accumulated. For this excavation the referee seems to have allowed a substantial sum in the recovery. I am unable to see under what clause of the contract this can be allowed. There is a material dispute as to whether the pipe was laid at all below the level named in the contract. Upon this question of fact it is possible that the finding of the referee would be conclusive. Under the contract, however, the plaintiffs were not authorized to vary from the terms thereof except upon the written order of the engineer. This provision in the contract was undoubtedly inserted, in part, to meet just such contingencies. The plaintiffs were not bound to dig the ditch one inch deeper than called for by the contract, except upon the written order of the engineer. The contract was itself notice to the plaintiffs that the engineer could only alter the provisions thereof, or the specifications under which the

conduit was placed, by a written order. In the absence of such a written order, we are unable to discover any legal justification for the allowance of the plaintiffs' claim in this respect. Just how much was included in the allowance made by the referee for extra depth of this ditch does not appear. There is no basis from which we can correct the error by deducting from the judgment any specific amount, and affirm it as modified.

By paragraph 104 of the contract it is stipulated that no extra work shall be allowed or paid for, except such work be done upon the written order of the engineer, countersigned by the superintendent, and that no claim for extra work shall be made, except under these conditions. It is further provided by paragraph 105 that the contractor shall, before the 15th day of the month succeeding that in which any extra work is done or material furnished, file with the engineer and with the board a claim for such damage or extra work or materials, with the order, or a copy thereof, on which such work or materials were furnished. It is further provided:

"In case the contractor fails to file such claim for such extra work done and materials furnished, he shall have no claim for compensation for the same against said board."

It is conceded that no claim for extra compensation was filed, for any extra work done, before the 15th day of the month succeeding that in which the work was done. It is difficult to see how, in the absence of such action on the part of the plaintiffs, their claim therefor can now be allowed, under the contract. It is possible that, for such extra work as the engineer has specifically allowed, the city may be deemed to have waived this provision of the contract. Inasmuch, however, as there must be a new trial, we will not further discuss the merits of the various claims for extra work which seem to have been allowed by the referee. Upon such new trial the defendant may ask for such specific findings upon the several claims of the plaintiffs, so that upon appeal, if one should be necessary, the question may be directly presented as to what claims for extra work have been allowed, and as to the grounds upon which their allowance has been made.

By paragraph 16 of the referee's report, there was included in this judgment the sum of $1,620.28 for recleaning and repainting a part of this pipe, made necessary by reason of a freshet in the Hudson river by which a bulkhead erected by the plaintiffs was removed, and muddy water was forced into this conduit. Thereafter the plaintiffs were directed to reclean and repaint the conduit, for which it is found that the reasonable compensation is the sum named. By section 54 of the contract, the plaintiffs were required to keep the excavation clear from water, from whatever source, while the pipe was being laid and surrounded by concrete, and until all danger of damage from water was passed; and by paragraph 107 of the contract the contractor was held responsible for all materials or work, and was required to make good, at his own cost, "any injury or damage which said materials or work may sustain from any source or cause whatever before the acceptance thereof." Under the provisions of the contract cited, the damage caused by the freshet, although without fault on the part of the plain-

tiffs, was such damage as the plaintiffs undertook to prevent, and to repair which they have agreed at their own expense. The labor performed in such repairs, therefore, cannot be made the basis of any claims against the city.

By section 55 of the contract, the contractor was required to furnish and put in place suitable sheathing wherever necessary to support the sides of the excavation. These supports were required to be removed as the work progressed, in such a manner as to prevent the caving in of the sides, and the voids left by their removal were to be filled in by ramming in fine material that was specially adapted to the purpose. "In places, however, where the engineer is of the opinion that the sheathing cannot be removed without injury to the work, he shall give written directions that it shall be left in place, and the contractor shall be paid for the lumber thus ordered left at the rate named in item 12, namely, ten dollars per thousand feet, B. M., but no allowance shall be made for loss or waste." By a letter dated July 12, 1898, the resident engineer directed certain sheathing to be left in the trench. For the sheathing thus left in, the engineer himself allowed $2,210. The referee, however, has gone further than this, and has made an allowance for much more sheathing than was left in the trench by the order of the engineer. For such allowance we are unable to find any justification in the contract.

While we have pointed out certain items which we think were improperly allowed by the referee, we do not desire to be understood as assenting to the correctness of the allowance of other items not criticised. Upon a new trial, which seems to be necessary, it can perhaps be made more clear to appear the exact elements of damage claimed and allowed.

For the reasons specified, we must direct a reversal of the judgment entered, upon the law and facts, the discharge of the referee, and a new trial of the issues.

Judgment reversed upon the law and facts, referee discharged, and new trial granted, with costs to appellant to abide event. All concur.