6]     AUGUST TERM, 1914.          207

First Savings & Trust Co. v. Milwaukee County, 158 Wis. 207.

FIRST SAVINGS & TRUST COMPANY, Receiver, Appellant, vs.
MILWAUKEE COUNTY, Respondent.
SAME, Respondent, vs. SAME, Appellant.

*May 27—October 6, 1914.*

*Counties: Viaducts: Statute construed: Contracts: Subsequent
changes in plans: Written notice: Waiver: County board: Pow-
ers of committees: Meetings: Powers of engineer as to changes:
Contract construed: Liability of county for "improper orders:"
Bad faith: "Arbitrary" orders "without justification or ex-
cuse:" Sufficiency of findings: Engineers: Duties as to lines and
grades: Allowances to contractors for hindrances and delays.*

1. Sec. 5 of ch. 447, Laws of 1913, relating to the construction of
   viaducts, which requires the county board to have complete
   plans and specifications prepared and to let the contract to the
   lowest bidder and further provides that said board shall "enter
   upon the construction of such viaduct . . . *in conformity there-
   to,*" does not preclude the county from making subsequent
   changes in the plans and specifications, where such changes are
   made in good faith and not for the purpose of favoring the con-
   tractor or of evading the statute.
2. Sec. 668, Stats., which provides for the appointment of commit-
   tees by the county board and that "the committees so ap-
   pointed shall perform the duties and report as prescribed in
   such resolution," does not restrict the power of the committees
   appointed to making investigation and reporting recommenda-
   tions, nor does it undertake to define what power is conferred
   on committees.
3. Sec. 652, Stats., providing that the powers of a county as a body
   corporate can only be exercised by the county board or in pur-
   suance of a resolution or ordinance by them adopted, contem-
   plates that some powers of a county board may be exercised by
   a committee pursuant to resolution, but does not attempt to
   define the extent of this power of delegation.
4. A county board may delegate to its committee the power to make
   changes in the plans and specifications for the construction of
   a viaduct, so long as such changes do not substantially alter
   the character of the structure or unreasonably increase its cost.
5. The fact that such committee was appointed before the contract
   in question was made is not significant, such committee having
   been appointed in connection with the work being done by a
   former contractor under a similar contract, and it having evi-

dently been the intention of the board to continue this committee until the work was completed.

6. As between individuals, a provision in a construction contract requiring that notice of any changes to be made in the work must be in writing, may be waived.

7. Where a county had power originally to provide that notices of required changes in the construction of a viaduct might be oral, it could waive a provision in the contract requiring a written notice; and the county having delegated all the power in the matter that it could delegate to a committee, the latter might waive the provision in regard to written notice in reference to any change it had the power to order.

8. Section 8 of the contract for the construction of a viaduct, which empowered the county board, on the written order of the engineer, to "change any portion of the work from time to time and make any addition thereto or deduction therefrom," did not conflict with section 35 of the specifications, which provided that "any modifications of the prescribed lines, grades, positions, methods or materials of construction which in the judgment of the engineer may be expedient, shall be made by the contractor." The former cannot be restricted to merely providing for extras, but authorized the board, during the progress of the work, to make any desired changes in the plans, contract, materials provided for, or in the manner of doing the work; while the latter did not give the engineer unlimited power to change the materials and methods of construction in his own discretion, without any order or direction from the board, but authorized him to act on his own judgment in remedying inherent defects in the plans and in making necessary and obviously proper changes not involving an unreasonably large addition to the contract price, considering the magnitude of the work.

9. By the terms of such contract the contractor might use the plastered form method in finishing the surfaces, but he was required instead to use the spaded surface method; the contract permitted sectional construction of the arches, but he was required to build them monolithically; he was required to substitute iron linings in place of plaster forms provided for in the specifications; and a change was ordered in the construction of the railings. *Held* that, in the absence of proof that such changes did not substantially alter the character of the structure and did not increase the cost thereof to an unreasonable amount, they constituted changes in the contract itself, not mere modifications of the methods or materials of construction which, under section 35 of the specifications, might be altered by the engineer without consulting the board.

10. If orders given by the engineer in respect to such changes were given in bad faith or through inexcusable ignorance, the expense of carrying out such orders should not be taken into account in determining whether the changes themselves involved an unreasonable addition to the contract price.

11. In the contract between a county and its engineer in charge of the construction of a viaduct, the engineer agreed to save the county harmless from liability, delay, or loss sustained by reason of any improper orders or decisions or any inaccurate, insufficient, or wrong instructions or directions rendered or given by him in the performance of his duties, and to reimburse the county for any loss it might sustain on account thereof. *Held* that, although the construction contract referred to such contract with the engineer and stated that its terms were known to the contractor, said agreement of the engineer was for the benefit of the county and not for the benefit of the contractor.

12. An engineer in charge of construction work for a county and whose decision is by the contract to control as to the interpretation of the plans and specifications, is, although employed and paid by the county, treated in law as an umpire or arbitrator, and his decisions can only be attacked for fraud or bad faith.

13. The contractor for the work has, however, the right to rely upon the employment of an engineer of ordinary skill and judgment; and if he is ignorant and incompetent and gives foolish and unnecessary orders, to the detriment of the contractor, the county is liable therefor to the contractor.

14. A provision in the construction contract in such case that although the decision of the engineer was to control as to the interpretation of the plans and specifications during the execution of the work, that fact should not deprive the contractor of his lawful right to redress after the completion of the work for any improper orders or decisions which may have been received during the execution of the work, did not add anything to the liability of the county.

15. An order or decision made in good faith upon a matter as to which there was reasonable ground for the exercise of discretion and in reference to which engineers might honestly differ was binding and was not an "improper order or decision" within the meaning of the contract.

16. Findings of the trial court that certain orders of the engineer were "arbitrary, unreasonable, and without justification or excuse," do not necessarily amount to findings that the orders were made in bad faith or through ignorance or incompetence; and such findings are set aside, not because insufficiently supported by the evidence, but because this court is not satisfied that they would have been made had the trial court taken the

same view of the law as to the liability of the county which. this court takes.

17. A specification in a contract for the construction of a viaduct providing that lines and grades will be established by the en-gineer, and no work shall be commenced until these are given; that the contractor shall protect lines, levels, etc., from injury; and that should any marks, lines, levels, etc., be destroyed or removed by him or any of his men, he shall pay for replacing the same,—is *held*, in the absence of proof of any custom to the contrary, to require the engineer to furnish not only the main lines and grades but also the necessary details.

18. Provisions in the construction contract to the effect that no al-lowance shall be made to the contractor for any hindrances or delays from any cause, but that where the county caused delays the engineer might extend the time for completion of the work,. are *held* not to prevent a recovery by the contractor of dam-ages for delays caused (1) by fraudulent conduct of the en-gineer; (2) by reason of orders made in bad faith and to ham-per the contractor; (3) by reason of orders unnecessary in themselves and detrimental to the contractor and which were the result of inexcusable ignorance or incompetence on the part of the engineer.

19. A delay, during the construction of a large viaduct of reinforced concrete, for the time required to obtain the opinion of a con-sulting engineer as to whether it was advisable to change from sectional to monolithic construction of the arches, cannot be said to have been caused by the bad faith of the county or its. engineer so as to entitle the contractor to recover damages on. account thereof.

20. The rule that where a statute requires a certain thing to be done at a meeting of a county or town board the act cannot be done by separate individual action on the part of the members of the board, but must be done at a duly called meeting, does not extend to the action of a committee of a county board to which has been delegated the power to consider and determine the questions that might arise concerning and during the construc-tion of a viaduct under a contract therefor made by the county,. it being necessary for such committee to have frequent and informal meetings and consultations with the engineer at which all the members might not be able to be present.

CROSS-APPEALS from an interlocutory judgment of the cir-cuit court for Milwaukee county: F. C. ESCHWEILER, Circuit. Judge. *Modified and affirmed.*

### General nature of the action.

The action arises out of a contract for the construction of the Grand avenue viaduct in the city of Milwaukee, made October 21, 1908, between the National Engineering & Construction Company and the defendant, pursuant to the provisions of ch. 444, Laws of 1903. This contract recites that the terms of the contract between the county and the engineer are known to the parties. The amount claimed exceeds $200,000. It was stipulated on the trial that all issues in the action be tried except the amount and the extent of the claims of the plaintiff; that the court might enter an interlocutory judgment upon such determination; that at a subsequent time, to be fixed by the court, testimony might be taken as to the extent and amount of all claims of the plaintiff that shall be determined by the interlocutory judgment to be lawful claims, and findings made thereon by the court, and that either party after the entry of the interlocutory judgment might appeal therefrom and have the issues raised thereon determined before taking the testimony on the extent or amount of any items or claims that may be allowed by the court. The plaintiff brings this action as receiver of the National Engineering & Construction Company.

### Material provisions of the contract involved on this appeal.

Sec. 4 provides that the viaduct shall be constructed exactly and completely according to the conditions and provisions of the contract and of the plans and specifications.

Sec. 6. "The work described in this contract shall be done to the satisfaction of the engineer, who shall be sole judge as to the amount, quality, acceptability and fitness of the material and work, and shall have the right to correct any errors or omissions in the plans and specifications, when such correction is necessary for the proper fulfilment of their intention."

Sec. 7. The contract price for the work was agreed upon at $372,000, less the sum of $30,654.75 allowed a former contractor, the Newton Engineering Company, for work on said

viaduct. The contract price was to be paid and received as full compensation for all material, tools, use of the same, labor, loss or damage arising out of the work, loss from action of the elements, loss from any unforeseen obstruction or difficulty, and for all risks of every description connected with the work, also for all expense incurred by or in consequence of the suspension or discontinuance of the work provided for.

Sec. 8. "The contractor agrees that the board on written order of the engineer, approved by said board, *may change any portion of the work from time to time, and make any addition thereto, or deduction therefrom,* and said contractor hereby waives any right to damage that he may be entitled to by reason of such changes, and all additions to or deductions from the contract price, except as otherwise provided herein, shall be made as hereinafter stipulated. But no claim for extra work or materials shall be considered or allowed, nor shall any changes in the work be made by the contractor, except on such written order. . . ."

"In case any extra work shall be required in the proper performance of the work contemplated under this contract, the board reserves the right to have such extra work done by any other firm or corporation than said contractor whenever the consent of his bondsmen to such extra work cannot be secured."

Sec. 10. "The engineer shall have power, without further authority from the board, to condemn all work which in his opinion is not done in accordance with this contract and specifications, or is not done to his satisfaction. The engineer shall also have power, with the approval of the board, to draw detail plans, to change the plans, order extra work, or grant it extension of time."

Sec. 17. "The contractor shall not be entitled to any claims for damages against the county for any hindrance or delay from any cause whatever in the progress of the work, or any portion thereof, but said hindrance may entitle said contractor to such extension of time for completing the contract, from causes not elsewhere stated, as may be determined by the engineer, with the consent of the board, provided the contractor shall make written claim giving the cause of the detention at the time of the detention."

Sec. 25. "The contractor is required to check all leading dimensions and clearances and to become responsible for the

exact position and elevations of all parts of the work, and the approval of the working drawings by the engineer shall not relieve the contractor of its responsibility."

Sec. 28. "The contractor is presumed to know and to be satisfied by personal examination of the nature, character and location of the proposed work and all facts and circumstances respecting the same, and no information derived from maps, profiles, drawings, specifications, or from the engineer or his assistants shall in any way relieve the contractor from any risk or from fulfilling any and all of the terms of the contract and specifications."

Sec. 29 provides that the viaduct is to be completed according to plans 1 to 10 inclusive.

### Specifications.

Sec. 11. "*Connections.* In connecting concrete already set with new concrete, the surface shall be cleaned and roughened and mopped with a mortar composed of one part cement and one part sand to cement the parts together."

Sec. 12 provides for expansion joints.

Sec. 13. "All spandrel and retaining walls shall be built in continuous work between expansion joints, from foundations to top of cornice."

Sec. 14. The concrete work on skew arches is required to be continuous.

Sec. 15 provides for wrought iron pipes to be built in the arch to carry away any water that may seep through the pavement and fill.

Sec. 17. "*Casing.* The piers, abutments, retaining walls and spandrel walls shall be built in timber forms. These forms shall be substantial and unyielding, of the proper dimensions for the work intended, and all parts in contact with exposed faces of concrete shall be finished to a perfectly smooth surface by plastering with a mixture of plaster of paris and lime, so that no mark or imperfection shall be left on the work."

Sec. 18. "*Concrete facing.* The concrete shall be deposited in smooth molds as specified in paragraph 17. A mortar facing three quarters of an inch thick composed of one part Portland cement and two parts sand shall be deposited directly against the molds, which shall be kept well oiled in advance of the work in progress. The concrete backing shall be de-

posited in the same layer and be well rammed in place, at the same time leaving no definite plane or surface of demarkation between the facing and concrete backing. The faces of the arches at intrados and extrados shall be rounded off leaving no sharp corners."

Sec. 19. *"Centering.* The contractor shall build an unyielding falsework of centering. The lagging shall be dressed to a uniform thickness so that when laid it shall present a smooth surface, or it shall be made smooth by plastering or other efficient means."

Sec. 24. *"Hand railings and parapets.* The hand railing or parapets shall be of concrete of the forms and dimensions shown on plans and shall be brought true to line, and be firmly fastened in the position shown."

Sec. 32. *"Lines and grades.* Lines and grades will be established by the engineer and no work shall be commenced until these are given."

Sec. 33. *"Extra work.* The contractor must be prepared to do any extra work that may be ordered in writing by the engineer, and for this he will be paid at current contract rates for work of similar character, or if the extra work should be of a class for which no rate is fixed by current contracts, the actual reasonable cost to the contractor, as determined by the engineer, plus fifteen per cent. of said cost. The contractor shall have no claim for compensation for extra work unless the same is ordered in writing by the engineer."

Sec. 34. *"Inspection.* All material furnished by the contractor shall be subject to the inspection and approval of the engineer, and the engineer shall have the power to condemn all work which in his opinion is not done in accordance with this contract and specifications."

Sec. 35. *"Modifications.* Any modifications of the prescribed lines, grades, positions, methods or materials of construction which in the judgment of the engineer may be expedient, shall be made by the contractor."

Sec. 36. *"Interpretation of plans and specifications.* The decision of the engineer shall control as to the interpretation of the plans and specifications during the execution of the work thereunder, but this shall not deprive the contractor of his lawful rights to redress after the completion of the work for any improper orders or decisions which may have been received during the execution of the work."

Sec. 39. *"Delays.* No allowance or charge shall be made to or by the contractor for any hindrance or delay from any cause, in the progress of his work, but in any such case the engineer in charge may give such extension of time stipulated herein for the completion of the work as he may deem proper, provided the contractor gives immediate notice in writing to the engineer in charge of such hindrance or delay and the cause of it."

*Contract between Milwaukee county and its engineer.*

The following are the portions of this contract that are deemed material on this appeal: The engineer agreed to per- form the duty of supervising the work and all other duties and services usually performed and rendered by engineers having entire supervision and charge of and sole responsi- bility for the proper execution of similar work and structures. He agreed to see that the work was performed and the ma- terials supplied as provided in the plans and specifications and that the work was done in accordance therewith so as to pro- duce the best results. He was held responsible to the county for the proper execution of the work in every detail and for the final results. He agreed to lay out the work on the ground and give the contractor all necessary measurements as to the location of piers, abutments, and other structures and the setting of the necessary stakes. He agreed to perform all duties as consulting and supervising engineer of said work faithfully and so as to protect the interests of *Milwaukee County* even though his duties may not be specifically defined in the contract, and to indemnify the county against any loss or injury which might result from the failure, carelessness, or neglect of himself or those working under him. He fur- ther agreed to accurately and properly interpret the plans and specifications for the contractor and to accurately instruct, order, and direct the contractor in the execution of the work and to save said county "harmless from liability, delay or loss whatsoever which may be sustained by any improper orders or decisions or any inaccurate, insufficient or wrong in-

structions or directions rendered or given by said party of the
first part [the engineer] in the performance of his duties as
such engineer hereunder and will reimburse said county for
any loss it may sustain on account thereof."

In case any dispute arose between the contractor and the
engineer over the interpretation of the contract or as to the
performance of the work, he was required to notify the de-
fendant, or its committee having the matter of the construc-
tion of the viaduct in charge, in writing. The engineer was
required to give bond in the sum of $15,000 for the faithful
performance of his duties.

*General summary of the claims made by the plaintiff.*

| | | |
|---|---|---:|
| Item 1. | Extra expense on arches on account monolithic construction in place of sectional construction | $43,671 00 |
| Item. 2. | Extra expense piers and haunches on account monolithic construction in place of sectional construction | 37,016 57 |
| Item 3. | Extra expense because forms were ordered left on too long | 30,330 00 |
| Item 4. | Extra expense because forms were ordered on too long, necessitating extra expense in rubbing down | 8,320 00 |
| Item 5. | Extra expense sheet iron linings ordered in place plastered forms | 15,008 00 |
| Item 6. | Extra expense change of manner of construction of railing and lamp posts | 5,990 40 |
| Item 7. | Extra cost providing lines and grade | 5,040 00 |
| Item 8. | Extra expense on filling, alleged to be caused by engineer order to leave out drain pipes | 10,025 00 |
| Item 9. | Extra expense due to engineer interfering with contractor's work | 37,600 00 |
| Item 10. | Extra miscellaneous extra work ordered by engineer | 15,000 00 |
| | Total amended claim | $208,000 97 |
| Item 11. | Balance contract price | 54,316 23 |
| Item 12. | Interest and expense of negotiating loans | 7,500 00 |
| Item 13. | Switch track and delay | 1,000 00 |
| Item 14. | Extra excavating on Grand avenue | 164 10 |
| | Total of claim | $270,981 30 |

The items which go to make up these amounts are set forth
in detail in the claims and amended claims filed with the
county board.

*Synopsis of findings of fact.*

1. The necessary preliminary steps were taken by the defendant under ch. 444, Laws of 1903, for the building of the viaduct and the letting of the contract therefor. .

2. Not material to the issues raised.

3. Recites the making of the contract referred to for the construction of the viaduct, and the presentation by the Construction Company of its claim to the county for the damages claimed by it and the disallowance of such claim by the county board.

4. Recites certain provisions contained in the contract between the county and its engineer.

5. Recites various provisions of the contract between the county and the Construction Company.

6. Finds that a certain resolution was passed February 1, 1909, by the county board of *Milwaukee County,* and that on the 28th of April, 1909, a second resolution substantially in the same form was passed, which reads as follows:

"\. hereas, questions are arising and will continue to arise during the construction of the Grand avenue viaduct in respect thereto, requiring immediate consideration and determination by the board of supervisors of *Milwaukee County;* and

"Whereas, such questions cannot be conveniently and with proper dispatch considered and determined at meetings of said board and cannot be delayed, therefore be it

"Resolved, that all questions that have arisen or may arise for the consideration of the board of supervisors, concerning and during the construction of the Grand avenue viaduct, be and are hereby referred to the joint committee on highways, bridges and railroads and laws, legislation and rules, with full authority to receive, consider and determine the same, and in the name of said committee or the board of supervisors to decide, order and direct in respect thereto; and power is hereby conferred upon and delegated to said committee so as to do as fully and completely in every instance and in every respect as said board might do in the premises."

The court then recites that such resolution was in force and effect during the construction of the viaduct.

7. The arches constructed were square arches and no skew arches were used in the construction of the viaduct.

8. There was no provision in the contract, plans, or speci-
fications which required or gave the option to the contractor
to make the concrete work in the piers and haunches in said
viaduct by the so-called sectional method.

9. "I further find that there was no order given by said
engineer to the said National Engineering & Construction
Company, hereinafter called the contractor, to make any
changes in the plans or specifications as to the construction of
said piers and haunches in so far as to make them in any dif-
ferent form or manner than might be properly required under
said specifications and plans."

10. "I further find that the said piers and haunches were
constructed substantially as monoliths, that is, by continuous
pouring process, but that such monolithic construction was a
reasonable and fair interpretation of the plans and specifica-
tions for the construction of said piers and haunches."

11. "That the centering, so called, or false work necessary
to be erected for the support of the arches during the pouring
of the concrete into the same in the process of construction,
was designed and prepared by the contractor, and that no
unnecessary or improper order with reference to the same was
made or given by the said engineer."

12. "That shortly after the contractor commenced the
building of said viaduct, the aforesaid committee of the
county board and the aforesaid county engineer ordered and
required that the method of finishing the surfaces should be
changed so that instead of using the plastered form method
referred to in the specifications, the so-called spaded surface
method should be used."

13. "That after the making of the change specified in the
preceding finding, the said contractor demanded and re-
quested of said engineer to evidence such change of method in
writing, but said engineer refused to give such written order."

14. "That thereafter the method of surfacing the concrete
work in said viaduct was changed from the plastered form
method to the spaded surface method, and that the question
as to whether there was an increase of cost to said contractor
on account of said difference and change is to be left open for
further testimony and accounting."

15. That at a regular meeting of the committee of the
county board, held in April, 1909, at which the engineer and

the consulting engineer, Mueser, were present, the committee determined that the pouring of concrete in the arches of the viaduct was to be done by the monolithic method of continuous pouring, and that such determination was duly communicated in behalf of the committee and the engineer to the contractor, and that thereafter the pouring of the arches was carried on by the monolithic method.

16. "That the said contractor duly requested the engineer of said county to give a written order for said change in the method of constructing said arches, and which said request was refused by said engineer."

17. That the work of pouring by the monolithic method was more expensive to the contractor than would be the pouring of the same in the manner prescribed by the specifications.

18. "That such monolithic construction of the arches was a better construction than the sectional method."

19. "That the said engineer ordered, required and compelled the contractor to leave all the forms on all vertical surfaces of the viaduct for a period of from at least ten to twelve days after the pouring of the concrete. That such requirement was arbitrary, unreasonable and without proper justification or excuse, and caused the said contractor by reason thereof extra expense and damage, the amount whereof is to be determined later."

20. "That said order and requirement of the engineer was obeyed by the contractor, after due protest to said engineer and to the aforesaid committee, which said committee acquiesced in and consented to the carrying out of the said order of the said engineer."

21. "That the aforesaid committee of the county board and also the said county engineer required and ordered the contractor to line the forms of the cornices of said viaduct with sheet iron, as a change from the plastered form method provided in the specifications, and also that the outside faces of the upper structure of said viaduct be finished in the same manner, that is, with sheet iron lining, and that by reason of said orders the contractor did so complete the aforesaid work with the use of said sheet iron linings."

22. "That the use thereof instead of the method provided in the specifications gave a better result than that from the use of the method prescribed in the specifications, and in-

creased the cost of such work to the said contractor, to an amount to be determined later."

23. "That the contractor requested of the engineer written evidence of such change, and that the engineer refused to make the same."

24. That the engineer required the contractor to use a different method of constructing the railings and lamp posts than that provided in the specifications, which order resulted in increased expense to the contractor, and that the engineer refused to order the change in writing.

25. That the engineer claimed during the progress of the work that written orders were not necessary.

26. That the engineer refused to furnish lines and grades to the contractor during the progress of the work after the same were demanded.

27. That the contractor was forced to have such work done at his own expense and to his loss and damage.

28. That the engineer, arbitrarily and without reason or justification, ordered and directed the contractor to omit putting in certain drains in the arches as provided for in the specifications.

29. That by reason of such order the contractor was put to additional expense.

30. That thereafter the engineer required the contractor to put in such drains, at a time and in a manner which caused the contractor additional expense.

31. That the engineer during the process of the construction of the viaduct did not notify the contractor that he would insist that none of the centering between the east and west abutment piers should be removed until twenty-eight days after the arches were constructed.

33. "That shortly after the beginning of the work of building the said viaduct by the contractor, the county engineer ordered and required the said contractor to pile in the immediate vicinity of the part of the viaduct then to be constructed sufficient sand, gravel and other material to complete the pouring of such portion of the viaduct before any pouring thereof should be commenced."

34. That said order was arbitrary and improper and without reasonable justification and resulted in damage to the contractor.

35. "That during the pouring of the arches of said viaduct the county engineer, arbitrarily and unreasonably and without justification or excuse, ordered and required the contractor to delay the pouring of certain arches until four or five days after the completion of the pouring of the haunch adjacent to such arch. That said order was obeyed by said contractor and caused him expense and damage, the amount whereof to be determined later."

36. "That during the pouring of the arches of said viaduct said engineer required and ordered that the extrados or outside wooden forms be left on the arches for a period of at least six days after the pouring of such arches. That such order was unreasonable, arbitrary and without justification or excuse, and that the same put the said contractor to damage and extra expense. . . ."

37. "That on November 17, 1908, December 5, 1908, and September 21, 1909, said county engineer ordered and required the contractor to stop running concrete mixture into a pier at which said contractor was then working, and that such order was arbitrary, unreasonable, without proper justification or excuse, and caused the said contractor damage and expense. . . ."

38. "That the said county engineer in the month of April, 1909, by an arbitrary and unreasonable order, and without justification or excuse, prevented the said contractor from then proceeding, or proceeding before on or about May 1, 1909, with the pouring of the concrete mixture into the eighty-foot arch; that such delay caused the said contractor damage and expense. . . ."

39. "That the said county engineer arbitrarily and without justification or excuse ordered and required the said contractor to delay the pouring of concrete mixture in pier No. 3 for some time. That such order caused the said contractor delay, extra expense and loss and damage. . . ."

40. "That the contractor, at the order of the county engineer and the aforesaid committee, left certain piling as a protection to the county roadway south of the viaduct, for which it was agreed that the contractor should be paid, and which has not been paid. . . ."

41. "That certain other written orders for so-called extra work were issued from time to time by the engineer to the

said contractor, and complied with by said contractor, and that the question as to the amounts thereof, and how much, if anything, has been paid thereon, is left open and to be determined later."

42. That an insufficient number of expansion joints were provided for the parapet walls, which resulted in damage to the viaduct, which damage the contractor was ordered to repair, and also to put in additional joints, all of which resulted in loss and damage to him.

43. That the committee of the county board were in constant supervision of the work and in constant communication with the engineer, and held many meetings, more or less of an informal nature, at which written minutes were not kept, and that said committee relied on the orders and directions of the engineer, and that the orders given by him were with the knowledge and understanding of the committee and with their acquiescence and consent.

44. "That a certain contract and agreement was made between the contractor and said county, by and through the said committee and said engineer, for the hauling of certain gravel or filling in connection with said viaduct, and the amount of any balance that may be due said contractor on account thereof is to be determined later."

45. "I further find that there is to be ascertained and determined the balance, if any, still due the contractor upon the agreed price for the construction of said viaduct and the amount whereof is to be determined later."

46. "I further find that there is no evidence to support any claim by the contractor on account of any payments made by it for the so-called switch track at the west end of said viaduct, for which it paid to the Chicago, Milwaukee & St. Paul Railroad for the benefit of the Newton Engineering Company, or for any delay in connection with the same switch track or the use thereof. Therefore said claim and the whole thereof is disallowed."

47. "I further find that there is no evidence upon which any claim may be supported or amount allowed to the contractor on account of alleged claim for interest, and negotiating loans, specified in said claim as $7,500, and therefore the said item and claim and the whole thereof is disallowed."

*Conclusions of law.*

"*First.* As conclusions of law I find that the plaintiff is entitled to have an accounting had to determine the amount, if any, on the following items, to wit:

"1. On account of the change from plaster forms to spaded methods in the construction of said viaduct.

"2. On account of the change from sectional to monolithic construction of the arches of said viaduct.

"3. On account of the order requiring the retaining of forms on the vertical surfaces an unreasonable length of time.

"4. For the change to iron linings in the forms on certain portions of said viaduct.

"4$\frac{1}{2}$. For the change in method of constructing the railings.

"5. For the failure of the engineer to furnish lines and grades in certain engineering work.

"6. For the order directing the omission of the placing of drains in said arches.

"7. For the order requiring the replacing of said drains.

"8. For the order directing the piling of material.

"9. For the delay in permitting the pouring of the concrete mixture into arches after the completion of the pouring of the adjoining haunches.

"10. For the order requiring the contractor to leave on the extrados forms an unreasonable length of time.

"11. For the delay in the pouring of the eighty-foot arch.

"12. For the delay in the pouring in pier No. 3.

"13. For the amount, if any, due on account of any unpaid amounts on the so-called extras evidenced by the written order.

"14. For the value of the piling left at the end of the viaduct.

"15. For the damages, if any, on account of the expansion joints.

"16. For the amount due, if any, on the gravel or filling contract.

"17. For the balance, if any, due on account of the agreed price.

"*Second.* I further find that the following items of said claim are not supported by the evidence and must be disallowed:

"(a) For any claim for extra expense in piers. and haunches on account of monolithic construction.

"(b) For any claim for extra expense in piers and haunches on account of the heavier or more expensive forms.

"(c) For any amount claimed on account of alleged extra heavy centering.

"(d) For any amount on account of claim for alleged order to keep up centering.

"(e) For the claim for interest in negotiating loans, being the claim specified at $7,500.

"(f) For the switch track and delay, being the claim specified at $1,000."

The plaintiff appeals from that part of the judgment entered in accordance with conclusions of law designated "a" to "f" inclusive. The defendant appeals from so much of the judgment as is adverse to it.

For the plaintiff there was a brief by *Frank M. Hoyt, Walter D. Corrigan, W. B. Rubin,* and *G. J. Davelaar,* and a separate brief and oral argument by *Mr. Hoyt* and *Mr. Corrigan.*

For the defendant there was a brief signed by *Lyman G. Wheeler,* special assistant district attorney, and *Henry S. Sloan,* first assistant district attorney, and oral argument by *Mr. Wheeler.*

The following opinion was filed June 17, 1914:

BARNES, J. The plaintiff's appeal raises the question whether certain findings of fact adverse to it are against the clear preponderance of the evidence.

The defendant's appeal raises a like question. Defendant also contends that many of the findings of fact and conclusions of law were based on an erroneous conception of the law and on an erroneous construction of the contract involved, and that the conclusions of law are not supported by the facts found, conceding that there is sufficient support in the evidence for the findings of fact made. Logically the legal

propositions should be first disposed of, because if they are settled so as to eliminate any of the findings of fact or conclusions of law we are not concerned with the quantum of evidence to support these findings that is contained in the record. The legal questions raised in fact affect the integrity of many of the findings of fact and most of the conclusions of law.

### Construction of the viaduct statute.

The most comprehensive claim made is that under ch. 444, Laws of 1903 (the viaduct statute), and particularly sec. 5 thereof, it was the duty of the county to have prepared complete plans and specifications and to advertise for bids and let the contract to the lowest bidder, and that after bids were received and the lowest bid accepted, neither the engineer in charge, the committee that represented the county board, nor the board itself, could make any deviation from or addition to the plans or specifications, but the viaduct would have to be built in accordance therewith.

It is argued *inter alia* that when the county let the contract to the lowest bidder, to be performed in accordance with the plans and specifications, it had exhausted its power under the statute, and that to hold otherwise would enable the county to evade the provisions of the law requiring the contract to be let to the lowest bidder. The following cases, among others, are relied on: *Kneeland v. Milwaukee,* 18 Wis. 411, 417; *Kneeland v. Furlong,* 20 Wis. 437; *Ricketson v. Milwaukee,* 105 Wis. 591, 598, 81 N. W. 864; *State ex rel. O'Donnell v. Benzenberg,* 108 Wis. 435, 84 N. W. 858; *Board of Comm'rs v. Bunting,* 111 Ind. 143, 12 N. E. 151, 152. 2 Dillon, Mun. Corp. (5th ed.) § 791, and 3 McQuillin, Mun. Corp. § 1206, are also cited.

The statute, after requiring that plans and specifications shall be prepared and the contract let to the lowest bidder, provides that the county board shall "enter upon the con-

struction of such viaduct, bridge and approaches *in conformity thereto.*" It is this provision which it is insisted precludes the county from making any subsequent changes.

There is some force in the contention, but it cannot prevail. Undoubtedly it was the duty of the county to cause to be prepared substantially complete plans and specifications before advertising for bids. It should also exercise good faith in making changes and could not make them simply for the purpose of favoring a contractor or of evading the statute. But neither our architects nor engineers have arrived at that stage of perfection where they can design great structures and unerringly provide for every detail of their construction. They overlook things, and occasionally they make mistakes where they do not overlook. Sometimes these mistakes may be serious. Then, too, we are moving all the time whether we are progressing or not. New and advanced ideas even in the matter of concrete construction might well be worked out during the life of the contract sued on. If the plans proved to be inefficient in some important detail, it would be serious indeed if the county were required to go on spending its money on what might prove to be a worthless structure, when the waste and loss could have been avoided at a moderate cost, or possibly at no cost at all. We cannot think the legislature ever intended to create such an intolerable situation. The statute in terms does not prohibit changes being made. It merely requires the county to "enter upon the construction" of the viaduct in conformity to the plans and specifications adopted. There is no practical difference between the contention here made by the defendant and that made by the plaintiff in *Mueller v. Eau Claire Co.* 108 Wis. 304, 308, 84 N. W. 430, where the court held that the right existed to make changes under a statute similar to the one under consideration. More attention has been paid to this question perhaps than it deserves, but if held good it would defeat most of the claims made by the plaintiff, and it was argued at the

· bar and in the brief at considerable length and, we have no doubt, in entire good faith, by the attorney for the county.

*Power of the county board to delegate the broad powers which it attempted to delegate to its committee.*

As will be seen by a reference to the resolution set forth in the statement of facts, the county board attempted at least to confer on the committee all powers which it might itself exercise over questions arising out of the viaduct contract during construction. The committee was given *carte blanche* and there was little or no interference with it by the board.

The defendant contends (1) that the resolution, having been adopted over eight months ·before the contract was signed, cannot be construed as giving the committee power to do the things which the board reserved the right to do in the contract, such as the right to modify the contract as provided in sec. 8 thereof. (2) The power attempted to be delegated rested in the county board, under sec. 652, Stats., if it existed, and the board could only empower the committee to report to it under sec. 668, Stats. (3) The powers attempted to be delegated could not be conferred, because they were not merely ministerial, but called for the exercise of judgment and discretion and were in fact legislative. Sec. 668 provides:

"Any county board may, by resolution designating the purposes and prescribing the duties thereof and manner of reporting, authorize their chairman to appoint before the first day of November in any year ·a committee or committees from the members of the county board elect, and the committees so appointed shall perform the duties and report as prescribed in such resolution."

This section does not restrict the power of the committees appointed to making investigations and reporting recommendations. It does not undertake to define what power is conferred on committees. Whenever they are authorized to do

an act they must very properly report to the board what they have done.

Sec. 652 provides that the powers of a county as a body corporate can only be exercised by the county board *or in pursuance of a resolution or ordinance by them adopted.* This section contemplates that some powers of a county board may be exercised by a committee pursuant to resolution. No attempt is made to define the extent of this power of delegation.

It would seem particularly appropriate that the board should give broad powers to its committee, if it was authorized by law to do so. The contract was a large and important one. It extended over a very considerable length of time. Disputes and differences were almost constantly arising between the engineer and the contractor. It was advisable, to say the least, that the engineer might be able to frequently consult and advise with his principal. The county board was a large and unwieldy body. It could not well remain in continuous session, and if it did all of its members could hardly devote their time and attention to this work. Assuming that the committee was honest and competent, it could look after the matter better than the entire board. Some of the business of the county must be transacted by representatives of the board. There are, however, limitations on the power of the board to delegate even administrative functions, and the question presently before us is whether or not these limitations have been transgressed. Perhaps the cases even in this court are not entirely harmonious on the proposition.

We think, however, that our law is fairly well settled and is to the effect that the county board might delegate to its committee the power to make changes in the plans and specifications, so long as such changes would not substantially alter the character of the structure or increase its cost to an unreasonable amount. *Hasbrouck v. Milwaukee,* 21 Wis. 217;

*French v. Dunn Co.* 58 Wis. 402, 17 N. W. 1; *Mueller v. Eau Claire Co.* 108 Wis. 304, 84 N. W. 430; *Forest Co. v. Shaw,* 150 Wis. 294, 136 N. W. 642; *Rockwood v. Woodford,* 25 Wis. 443; *Cass v. Gibson,* 107 Fed. 363, and cases cited.

The fact that the committee was appointed before the particular contract was made we do not consider significant. The committee was appointed in connection with the work being done by a former contractor who was working under a contract similar to the one here involved. It was evidently the intention of the board to continue this committee until the work was completed. It looked after the work as it was intended it should, with the full knowledge and acquiescence of the board and with the intention on the part of the latter that it should perform the functions described in the resolution. The board went farther in its attempted delegation of power than it had the right to go if the resolution is construed literally.

## Power of committee of the county board to waive conditions of the contract.

It follows from what has been said that the committee of the county board might make changes in the contract, provided they were not material and did not result in unreasonable expense. At least as to any changes or additions made under sec. 8 and the last sentence of sec. 10 of the contract (copied in the statement of facts), they were to be made upon the written order of the engineer approved by the board. This approval might be given by the committee if the change or addition ordered was of such a character that the committee had power to give the order. We think it is established that some changes or additions falling within the provisions of these sections were made and that they were made on the verbal order of the engineer.

The court held that the matter of giving a written notice

was waived by the committee. The defendant contends that the committee had no power to waive such a provision. The facts present a strong case for the application of the doctrine of waiver. There is evidence tending to show that the engineer gave peremptory orders which he refused to put in writing, claiming that he did not have to do so and that he would drive the contractor off the work if they were not obeyed, and that the committee as well as the assistant district attorney upheld him in his position. There were certain clauses in the contract and specifications which lent color to this claim and which will be discussed later. Attention is presently called to sec. 14, which required the foreman or superintendent to follow without delay all orders or instructions of the engineer. The evidence also tended to show that one reason for refusing to give written orders was that they might injuriously affect the interests of the county in a suit pending between it and the former contractor. The court evidently believed the evidence of the plaintiff's witnesses on this branch of the case, and it was ample to show waiver if the power to waive existed. There is no doubt that as between individuals such a provision may be waived. *Laycock v. Parker,* 103 Wis. 161, 167, 79 N. W. 327; *Ponti v. Eckels,* 129 Wis. 26, 30, 108 N. W. 62; *Chicago & E. I. R. Co. v. Moran,* 85 Ill. App. 543, 551; *S. C.* on appeal, 187 Ill. 316, 324, 58 N. E. 335; *W. H. Stubbings Co. v. World's Col. Exp.* 110 Ill. App. 210, 219.

The defendant, however, insists that this rule has no application to municipal corporations. The cases relied on do not seem to be in point. *McManus v. Philadelphia,* 201 Pa. St. 619, 51 Atl. 320, and *Cashman v. Boston,* 190 Mass. 215, 76 N. E. 671, are cases wherein it is held that the engineer or supervising architect in charge of the construction of a building cannot waive the giving of a written notice, where it is required by the contract and authority to waive is not given. The power of a county board or of its committee to

waive such a provision is not passed upon.  In *Johnson v. Albany,* 86 App. Div. 567, 83 N. Y. Supp. 1002, no waiver was claimed and the question here involved is not passed upon.    The other cases relied on are to the effect that clauses in such contracts requiring written notices to be given are valid and will be enforced unless waived.   There is no doubt about this being an accurate statement of the law.   This court has so decided in *Burnham v. Milwaukee,* 100 Wis. 55, 75 N. W. 1014.    There are cases which hold that a municipality may waive a provision of this kind just as well as a private individual.   *Cincinnati v. Cameron,* 33 Ohio St. 336; *Elgin v. Joslyn,* 36 Ill. App. 301, affirmed in 136 Ill. 525, 26 N. E. 1090; *Dwyer v. New York,* 77 App. Div. 224, 230, 79 N. Y. Supp. 17.   It goes without saying that there are many things which a municipal corporation may waive. Ample evidence of this fact is furnished by our own reports. *Kane v. Fond du Lac,* 40 Wis. 495; *Webster-Glover L. & M. Co. v. St. Croix Co.* 71 Wis. 317, 36 N. W. 864; *Monroe W. W. Co. v. Monroe,* 110 Wis. 11, 85 N. W. 685; *Att'y Gen. v. S. & St. C. R. Co.* 93 Wis. 604, 67 N. W. 1138; *Benton v. Milwaukee,* 50 Wis. 368, 7 N. W. 241; *Sheel v. Appleton,* 49 Wis. 125, 5 N. W. 27; *Jaquish v. Ithaca,* 36 Wis. 108; *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496, 66 N. W. 512; *Coffee v. Chippewa Falls,* 36 Wis. 121.

The county in the first instance might have contracted that the required notice need not be in writing.   It might modify the contract in this regard if it saw fit.   No good reason is apparent why it might not waive it.   Municipalities, and particularly cities, are continually entering upon new enterprises which often require the expenditure of large sums of money for construction work.   They are building, acquiring and extending waterworks plants, lighting plants, telephone lines, and some of them have gone into the street railway business.   They must construct school houses, court houses, city halls, streets, sewers, and such like.   In doing this work

they aim and from a practical point of view are obliged to carry it on much the same as individuals would. In dealing with their contractors and employees it would seem reasonable that they should be subject to substantially the same rules of law that govern private individuals. Such is the holding in the well considered case of *Argenti v. San Francisco,* 16 Cal. 255. See, also, cases cited in notes on this case in 1 Notes on California Cases, 838; *United States G. Co. v. Gleason,* 135 Wis. 539, 545, 116 N. W. 238; and *Thomson v. Elton,* 109 Wis. 589, 85 N. W. 425. It is probable that in doing this work the county was performing a governmental rather than a municipal function. *Evans v. Sheboygan,* 153 Wis. 287, 141 N. W. 265. But when the character of the work is considered, we do not see how this can make any difference. Even the ordinary rule as to liability for negligent acts done in the performance of a governmental function does not hold good for certain kinds of damage done in constructing a highway. *Bunker v. Hudson,* 122 Wis. 43, 99 N. W. 448. We go no farther than to hold that, the county having the power originally to provide that the required notices might be verbal, it could waive the provision calling for a written notice, and that, the county having delegated all the power in the matter that it could delegate to the committee, the latter might waive the provision in regard to written notice in reference to any change it had the power to order.

*Apparently inconsistent provisions in the contract and power of engineer to modify the same.*

By sec. 6 of the contract the engineer was empowered to correct any errors or omissions in the plans and specifications when such correction was necessary for the proper fulfilment of their intention.

Sec. 36 of the specifications makes the decision of the engineer controlling as to the interpretation of the plans and specifications.

Neither of these sections authorizes the alteration of the plans and specifications further than may be necessary to carry out their real intent and meaning.

Sec. 8 of the contract empowers the board, on the written order of the engineer, to change any portion of the work from time to time and make any addition thereto or deduction therefrom.

Sec. 10 authorizes the engineer, with the approval of the board, to draw detail plans, to change plans, to order extra work, or grant an extension of time.

Sec. 33 of the specifications recites that the contractor must be prepared to do any extra work that may be ordered in writing by the engineer.

Sec. 35 of the specifications provides:

"Any modifications of the prescribed lines, grades, positions, methods or materials of construction which in the judgment of the engineer may be expedient, shall be made by the contractor."

The principal difficulty arises out of sec. 8 of the contract and sec. 35 of the specifications. It will be observed that the work done under sec. 8 must be done under the order of the board, while sec. 35 contains no such requirement. The plaintiff contends that sec. 8 applies to extra work only, and that the engineer had power under sec. 35 to change the materials and the methods of construction, in his discretion, without any order or direction from the board. The defendant contends that the specifications were no part of the contract; that if they were, the power therein given is referable to sec. 8 of the contract and must be exercised on the direction of the board, and that the county had no right to delegate to its engineer such powers as plaintiff claims were conferred upon him.

If there is necessarily a conflict between the contract proper and the specifications, we think the former should control. It is the duty of the court to harmonize the two provisions

unless they are so incongruous that they cannot reasonably be reconciled.   It is entirely clear that the specifications were made a part of the contract by appropriate reference thereto. We are not inclined to agree to the interpretation placed on these paragraphs by either of the parties.   The plaintiff's construction of sec. 8 is too narrow.   The power to "change any portion of the work from time to time and make any addition thereto or deduction therefrom" cannot be restricted to merely providing for extras.   If during the progress of the work the board concluded that it desired to make any change in the plans, or in the contract, or in the materials provided for, or in the manner of doing the work, we think it would have the right to do so regardless of what the engineer thought about the change, assuming that it was within the rule stated. It seems to us that sec. 35 was not designed to make the engineer the county board also, to the extent that he might mutilate its contract at pleasure.   It is obvious that in large undertakings of this kind some defects or omissions will be encountered in the plans and specifications during the course of construction.   A pillar may not be placed in the correct location; its height may not be correctly shown; it may not be strong enough to support the weight it was designed to carry.   The cement mixture provided for may not be rich enough for certain vital portions of the work.   The reinforcement may not be strong enough for other parts.   These things and many others that might be enumerated present, peculiarly, engineering questions, questions upon which persons who are not engineers or architects have no knowledge whatever.   On these matters involving technical attainments the county must perforce rely on the judgment of its engineer.   Neither the county board nor its committee could furnish any assistance on these subjects.   The county was spending a lot of money on a structure that was intended to stand, not to fall.   If there were any inherent defects in the plans, manifestly they should be remedied and obviously the

engineer was the party relied on to discover the defects and work out the remedy. It is to modifications of this character that we think sec. 35 was intended to apply, and possibly to some other minor matters where it was obviously proper that the engineer should take action on his own initiative. It would seem to be entirely reasonable that matters of this kind should be left to the judgment of the engineer. At best the county board could only put the rubber stamp of approval on his recommendations. We do not wish to be understood as saying that, where the change contemplated was substantial and involved a large additional cost or where there was reasonable doubt as to the necessity for making it, the board should not be consulted and its approval secured before the change was ordered. But as to all obviously necessary changes not involving an unreasonably large addition to the contract price, considering the magnitude of the work, the engineer might be authorized to act on his own judgment and was so authorized. So construed, sec. 35 does not conflict with paragraph 8 of the contract.

*Do changes in method of doing the work amount to changes in the contract?*

It is practically conceded that the contractor might, under his contract, use plastered forms and that he was required to use the spaded finish instead; that the contract permitted sectional construction of the arches and they were built monolithically; that the specifications provided for plaster forms and that iron linings were substituted therefor; and that there was a change in the construction of the railings.

The plaintiff contends that these changes, as well as some others, were not changes in the contract, but were mere modifications of the methods or materials of construction which were covered by sec. 35 of the specifications and which might be ordered by the engineer without consulting the county board. We have already stated the construction which we

think sec. 35 should receive.   If a contract provides for a certain method of doing a thing and the parties see fit to change that method, it is not apparent why they have not actually made a change in their contract.   This is more apparent where the specifications provide that a certain kind of a form shall be used or a certain style of railing shall be built and it is afterwards decided to use a different form or a different railing, as the case may be.

*Liability of the county for improper orders of the engineer.*

The contract between the county and the engineer contained a clause by which the engineer agreed to save the county harmless from liability, delay, or loss sustained by reason of any improper orders or decisions, or any inaccurate, insufficient, or wrong instructions or directions rendered or given by him in the performance of his duties, and to reimburse the county for any loss it might sustain by reason of the failure of the engineer to perform the obligations of his contract.   This contract was referred to in the contract between the plaintiff and the defendant, and it was stated therein that its terms were known to the contractor.   This we regard as a provision made for the benefit of the county and not for the benefit of its contractor.   The specifications, however, provide that the decision of the engineer shall control as to the interpretation of the plans and specifications during the execution of the work thereunder, but that this shall not deprive the contractor of his lawful right to redress after the completion of the work for any *improper* order or decision which may have been received during the execution of the work.

In his decision the circuit judge held that an improper order or decision is such an order in the method of construction as entails additional expense on the contractor to carry it out over the method prescribed in the plans and specifications. Under this definition, if in the judgment of the court the engineer made an honest mistake as to the true and correct in-

terpretation of the plans and specifications, and such mistake resulted in extra expense to the contractor, the county would be liable for the extra charge. Such was the definition given of an improper order by some of the expert witnesses who testified in the case. Unless the paragraph in the specifications which has been referred to has added to the liability which the county would otherwise assume under its contract, the conclusion of the circuit judge is not correct.

An engineer, although employed and paid by one of the parties, is treated in law in this class of cases as being an umpire or arbitrator, and his decisions can only be attacked for fraud or bad faith. *John Pritzlaff H. Co. v. Berghoefer,* 103 Wis. 359, 79 N. W. 564; *Coorsen v. Ziehl,* 103 Wis. 381, 79 N. W. 562; *Wendt v. Vogel,* 87 Wis. 462, 58 N. W. 764; *Forster L. Co. v. Atkinson,* 94 Wis. 578, 69 N. W. 347; *Hudson v. McCartney,* 33 Wis. 331; *Foeller v. Heintz,* 137 Wis. 169 (118 N. W. 543) and cases cited on p. 173; *Halsey v. Waukesha Springs S. Co.* 125 Wis. 311, 314, 104 N. W. 94.

There should, we think, in the present instance be one other qualification added to this rule, if in fact it is not included within it. The contractor had the right to rely on the belief that the county would employ an engineer of ordinary skill and judgment to take charge of the work. If in fact the engineer employed was ignorant or incompetent and gave foolish and unnecessary orders which operated to the detriment of the contractor, the fact that the engineer was doing the best he knew how should not relieve the county of liability. *O'Neill v. Milwaukee,* 121 Wis. 32, 98 N. W. 963; *Markey v. Milwaukee,* 76 Wis. 349, 45 N. W. 28. We do not regard the specification referred to as adding anything to the liability of the county for the acts of its engineer, and of course it is outside the domain of an expert witness to add to the terms of a written contract. The specification simply provides that certain acts on the part of the engineer shall not

deprive the contractor of his *lawful* right to redress for improper orders. The lawful right which the contractor had was to recover the damages which it sustained by reason of acts done by the engineer fraudulently, in bad faith, or through inexcusable ignorance. As to any orders made in good faith upon matters where there was reasonable ground for the exercise of discretion and in reference to which engineers might honestly differ, the decision of the engineer was binding and there was no lawful right to redress on the part of the contractor for such orders. We are in doubt as to whether the discussion of this subject is particularly helpful in this case. There were some orders given by the engineer which resulted in extra expense to the contractor and in reference to which it would appear to be a close question on the evidence as to whether the engineer was guilty of anything more than an honest mistake or error in judgment. The court, in making its findings with reference to these items, recited that the orders were arbitrary and unreasonable and without justification or excuse. We are at a loss to know whether the trial court treated every order which he deemed to be an improper order as falling within the category of those described in the findings as being arbitrary. To say that a thing has been done arbitrarily is not necessarily the equivalent of saying that it was done in bad faith or through ignorance or incompetency. The words "without justification or excuse" approach more nearly to finding bad faith, but they are not always used to indicate bad faith. In the light of hindsight we sometimes speak of acts as being unjustifiable or inexcusable in reference to which reasonable minds might differ when they were exercising foresight only.

We deem the safest practice to be to set aside the findings dealing with arbitrary and improper orders, not because we think there may not be sufficient evidence in the record to support them, but because we are not satisfied that the court would have made the findings of fact which it did if it took

the same view of the law as to the liability of the county that
this court takes. If the court deems it proper, on the evi-
dence already offered, to find that the orders were not made
in good faith and in the reasonable exercise of the discretion
vested in the engineer, appropriate findings covering the same
items can easily be made.

*Whose duty was it to furnish lines and grades under the con-
tract?*

Sec. 32 of the specifications reads:

"Lines and grades will be established by the engineer, and
no work shall be commenced until these are given. The con-
tractor shall protect lines, levels, etc., given from injury, and
should any marks, lines, levels, etc., be destroyed or removed
by him or any of his men, he shall pay for replacing the
same."

By finding 26 the court found that the engineer failed to
do certain engineering work necessary and required on his
part under the contract to furnish lines and grades to said
contractor during the progress of the work after demand for
the same. By finding 27 the court found that by reason of
such failure the contractor was necessarily forced to have
such work done at its own expense and at a loss and damage
to it, the amount of which was to be determined.

The defendant contends, correctly enough, that the ques-
tion involved is one of law arising out of the construction of
the contract. It further contends that the engineer was re-
quired to furnish only main lines and grades, and that as to
minute details the contractor was to work them out.

Upon its face sec. 32 would seem to require the engineer
to furnish all the lines and grades that were necessary. It
may be that it is customary in contracts containing like
clauses for the contractor to do the detail work. The plaintiff
offered some testimony tending to show that the custom was
to the contrary. It attempted to offer other evidence of like
tenor and effect, which, however, was excluded by the court

on defendant's objection, partly because it was thought that the contract was plain and partly because it was not preliminarily shown that the witness knew that contracts of this kind usually contained similar provisions or that he knew how such provisions were construed. We are inclined to adopt the conclusion of the court that on its face the contract not only required the engineer to furnish main lines and grades but also the necessary details. If there was a custom in vogue with reference to which the parties contracted which was to the effect that it was the duty of the contractor to provide all the detail lines and grades necessary, it was incumbent on the county to show it, and, having failed to do so, we think the twenty-sixth and twenty-seventh findings of fact and the conclusion of law based thereon should stand.

### Damages caused by delays.

Sec. 17 of the contract and sec. 39 of the specifications provide in substance that no allowance shall be made to the contractor for any hindrances or delays from any cause, but that where the county does cause delays the engineer may extend the time of the performance of the contract. If this clause is held to mean just what it says, it eliminates many of the claims for damages that are made by the plaintiff. The clause, however, in our judgment should not be construed to prevent recovery of damages for delays caused (1) by fraudulent conduct of the engineer, (2) by reason of orders made in bad faith and to hamper the contractor, (3) by reason of orders unnecessary in themselves and detrimental to the contractor and which were the result of inexcusable ignorance 'or incompetence on the part of the engineer. No good reason is apparent why an order which is traceable to any of the causes enumerated and which resulted in damage to the contractor should not constitute a valid basis of a claim for damages, as well as other acts done by the engineer that were the result of ignorance, bad faith, or fraudulent conduct.

*Delay in pouring the eighty-foot arch.*

By the thirty-eighth finding of fact the court found that the engineer, by an arbitrary and unreasonable order, and without excuse, prevented the contractor from pouring the eighty-foot arch from the middle part of April to after May 1st, which delay caused damage and expense to the contractor.

There was a sharp conflict in the evidence in reference to this delay, the engineer insisting that no delay whatever was caused on account of the change and that the pouring was commenced as soon as the contractor was ready to proceed with the work. There is sufficient evidence to warrant the court in finding that the delay was due to the failure of the engineer to give the order seasonably.

The testimony offered in behalf of the plaintiff tended to show that the engineer forbade the contractor to go on with the work until a conclusion was reached as to the manner in which the construction was to be carried on, and that the orders of the engineer were peremptory in this regard. Other testimony offered in behalf of the plaintiff tended to show that the engineer and the committee were waiting until Mr. Mueser, the consulting engineer, could come from New York and advise the committee and the engineer whether it would be advisable to change from the sectional to the monolithic construction of the arches, and that the engineer could not come or did not arrive until April 29th. Substantially all of plaintiff's evidence is to the effect that the engineer delayed the work until he could arrive at a satisfactory conclusion as to how it should be done.

If the committee or the engineer deemed it advisable to counsel with the consulting engineer before deciding on an important matter of this kind, it seems to us that they had a perfect right to do so and in fact should have done so. It is not apparent how either could be charged with bad faith on account of the delay which resulted from the cause specified.

Vol. 158 — 16

We think that so much of the thirty-eighth finding of fact as finds that the delay up to April 29th was without justification or excuse is wrong and should be set aside. The provision in the contract and the one in the specifications above referred to are very comprehensive and were no doubt intended to meet a case of this kind. There seems to be some evidence in the record which might justify the court in finding that the engineer did not give the order in regard to monolithic construction seasonably after the meeting of April 29th. If this is the fact, no reason for the delay is apparent and the plaintiff would be entitled to damages for delay caused by failure to give the order immediately after the meeting referred to. There do not appear to be any other facts found against the defendant which are not fairly supported by the evidence. This statement is not intended to apply to any conclusion of law that may be embodied in the facts, as the conclusions of law will be treated separately.

*Sufficiency of evidence to sustain findings of fact.*

It is not customary for this court to detail the evidence which it deems sufficient to sustain a finding of the trial court. It might be some satisfaction to counsel to know that the evidence had been read and carefully considered, but it is not going too far to ask them to take our word for it. The findings attacked as not being sustained by sufficient evidence are not numerous. The contentions of plaintiff in this regard that seem to be seriously urged are that the following findings should be set aside: (1) The finding whereby it was determined that plaintiff was not entitled to any claim for damages because of the monolithic construction of the piers and haunches; (2) the one whereby it was found that the plaintiff was not entitled to any extra compensation because of the heavier and more expensive forms used on the piers and haunches by reason of the monolithic construction; (3) the one whereby the court refused to allow any damages because of the alleged extra heavy centering used in the arches;

(4) the one whereby the court refused to allow any damage
to plaintiff for an alleged order to keep up the centering an
unreasonable length of time.   Besides the items above spe-
cifically named, the plaintiff appeals from a part of the inter-
locutory judgment disallowing two other claims made by it,
one for interest and the other for what is designated as the
switch-track delay.   No particular claim is made in this
court in reference to the disallowance of the two last men-
tioned items.   Counsel do say in their brief that the court
should have made certain findings requested by plaintiff.
The plaintiff's appeal, however, is only from paragraphs "a"
to "f" of the interlocutory judgment, which correspond with
the same paragraphs in the conclusions of law set forth in the
statement of facts.   The findings of fact challenged by coun-
sel for the plaintiff are numbered 8, 9, 10, 11, and 31.

A particularly earnest argument is made by counsel on the
proposition that the court was in error in holding that plaint-
iff was not entitled to extra compensation because of the
monolithic construction of piers and haunches.   We have en-
deavored to closely examine the evidence bearing on this im-
portant question.   It is not contended by counsel that there
is not evidence to support the finding as made, but it is as-
serted that the finding is against the great weight of the evi-
dence.

Our conclusion is that this court cannot and should not say
on the conflicting evidence that the finding of the trial court
is against the clear preponderance of the evidence.   As to the
other findings of fact that are attacked by the plaintiff, we
reach the same conclusion.   The result of such conclusion is
that the plaintiff cannot prevail on its appeal.

Turning to the appeal by the defendant, as already stated
its principal contention is that many of the facts found are
wholly immaterial and that they do not justify the conclu-
sions of law drawn therefrom.

The principal attack made by the defendant on the facts
actually found arises on the fifteenth finding, whereby the

court determined that at a meeting held at the Hotel Pfister in April, 1909, the committee of the county board authorized and directed that the method of constructing the arches be changed from the sectional to the monolithic. It is argued that no record was kept of the proceedings of this meeting; that all of the members of the committee were not present; and that it was a special meeting in reference to which notice was not given to all of the members. The conclusion drawn is that the meeting was not lawfully called and that any action taken by the committee would not be binding on the county.

A majority of the committee were present, and there was sufficient evidence in the record to warrant the court in finding that those present assented to the change, and we think sufficient evidence to warrant the finding that those who were not present ratified the action taken.

It is a well established rule that, where a statute requires a certain thing to be done at a meeting of a county or town board, the act cannot be done by separate individual action on the part of the members of the board, but must be done at a duly called meeting. We do not think this rule should extend to the action taken by a committee of the kind that was here employed. Many of their meetings were necessarily of an informal character; the members were frequently on the work observing how it was done, and it was necessary for them to have frequent meetings and consultations with the engineer, at which all of the members might not be able to be present. The character of their work was such as to render it impracticable to carry it on with that degree of formality that is exercised by boards in performing legislative or *quasi*-judicial functions. No statute is called to our attention which requires a committee of this kind to carry on its proceedings in the accurate and precise manner in which a town board, for instance, must act when proceeding to lay out a highway, and we think the finding of the court in this regard should be permitted to stand. We regard the finding as be-

ing an essential one, because under the established facts we do not think this change was one which the engineer was entitled to make on his own motion.   It is conceded that a better job would result from the monolithic than from the sectional construction, but no claim is made that the safety of the structure would be endangered by the sectional construction.   Besides, it appears that the engineer did not undertake on his own responsibility to order the change to be made. The supervising engineer, Mr. Mueser of New York, was called into consultation in reference to the change, according to the finding of the court, and so were the members of the committee.   Except as indicated elsewhere in this opinion, the findings of fact of which the defendant complains are approved.

We now proceed to point out wherein the court's conclusions of law are either contrary to the rules of law here laid down or should be set aside because the requisite facts have not been found to sustain them.

### Conclusions of law.

The first conclusion of law, which relates to a change from a plaster form to a spaded finish, is set aside as not supported by the findings.   The facts found should show, in addition to what has already been found by findings 12, 13, and 14, (1) that the change did not substantially alter the character of the structure, and (2) that it did not increase the cost of the structure to an unreasonable amount, taking into account the actual necessity for the change and the magnitude of the work called for by the contract.   We do not see how this second question can be determined until there is a trial on the merits and the amount of the necessary extra cost of making the change has been ascertained.   Some of the items of compensation claimed because of changes are so large that it is insisted the court should say as a matter of law that neither the committee nor its engineer had any power to order them.

Manifestly this cannot be done at this stage of the proceeding. The plaintiff may have been making claims that are extravagant. Besides, it insists that a large part of its claims for extra cost is due to intolerable intermeddling on the part of the engineer. The engineer was given almost unlimited power as to the manner in which the work should be carried on where no specific provision was made in reference thereto in the contract and specifications. Obviously damages caused by orders made in bad faith or through inexcusable ignorance should not be taken into account in determining whether the change itself involved an unreasonable addition to the contract price. If orders of the character named were given, the county is responsible for them. It is not intended to hold that plaintiff is not ultimately entitled to recover on the item covered by the first conclusion of law, but merely that on the facts presently found the conclusion of law should not be permitted to stand, and it is set aside without prejudice to the plaintiff.

What has been said with reference to the first conclusion of law is equally applicable to the second, which is based on findings 15 to 18 inclusive, and to the fourth conclusion, which is based on findings 21 to 23 inclusive, and the same direction is made in reference thereto.

The third conclusion of law, which deals with an order of the engineer requiring the retaining forms for vertical surfaces to be left on an unreasonable length of time, is set aside for reasons stated under the heading "Liability of the county for improper orders of the engineer." This conclusion is based on findings 19 and 20. There is no provision in the contract specifying how long these forms should remain in place. The engineer was empowered to make any direction in reference thereto that he saw fit, and the contractor was obliged to follow it. The matter presented a purely engineering question. If the order was one on the unreasonableness of which competent engineers would not disagree, then it was made either through inexcusable ignorance or bad faith and

the county is liable for damages resulting therefrom. The trial court should make its findings of fact specific on this question, and this may be done on the evidence already before it.

What has been said of the third conclusion is applicable to the eighth conclusion in reference to the piling of material and which is based on findings 33 and 34; also to the ninth conclusion in reference to the delay ordered in pouring into the arches after the haunches were completed, which is based on finding 35; also in reference to the tenth conclusion, dealing with the leaving on of extrados forms an unreasonable length of time, based on finding 36; also to the twelfth conclusion in reference to the delay in pouring pier No. 3, based on finding 39.

Conclusion of law numbered $4\frac{1}{2}$ is allowed to stand if it has actually been made. We do not find it among the conclusions of law nor in the interlocutory judgment signed by the court, and neither do we find any amendment to the conclusions or judgment in the record. The conclusion is printed as one of the conclusions of law, and both parties have argued the case on the basis that it was made. There is an exception in the record taken by the plaintiff to failure of the court to make such conclusion. It is conceded that this change was made because it was necessary to make it on account of the plans being defective. The defendant admits liability, but suggests that damages on the same account are claimed under another item in the plaintiff's claim. We assume as a matter of course that the court did not intend to duplicate damages.

The fifth conclusion of law has already been discussed, and is correct.

The sixth conclusion of law deals with an order of the engineer directing the contractor to omit the placing of drains in the arches, and the seventh with an order requiring the replacing of said drains. The matter of leaving out the drains in the first instance presented an engineering question, and or-

dinarily the same disposition should be made of the sixth conclusion that is made of the third, eighth, ninth, tenth, and twelfth. The order, however, stands on a somewhat different basis under the evidence. The specifications provided for the insertion of the necessary drains. Neither the engineer nor any one else attempts to justify the order, if it was in fact made. The claim of the engineer was that he did not order the drains to be left out, but simply permitted it to be done at the request of the contractor. The court has found the contrary. We do not find any substantial evidence in the record that would justify the order. As we understand the position of the county, it makes no attempt at justification, but rests on the propositions (1) that no such order was given; (2) that the engineer had no right to give such an order; and (3) that the contractor had no business to obey it.

In view of the position taken by the consulting engineer and of the other evidence on which this conclusion is based, and of the fact that the specifications plainly provided for the drains, we are of the opinion that this conclusion of law should be permitted to stand, although the findings of fact on which the same is based are not as complete as they should be.

The sixth conclusion of law being permitted to stand, it follows as a matter of course from the findings and the evidence that the seventh conclusion of law should not be disturbed. Some damages are sought to be recovered under these two conclusions that would seem to be remote.

The eleventh conclusion of law has already been discussed. The conclusion is set aside, and recovery for delay in pouring the eighty-foot arch is limited to such damages as occurred by reason of delay caused by the engineer after April 29, 1909.

The thirteenth conclusion of law is permitted to stand, but recovery thereunder is limited to such extras as were ordered by the committee or were ratified by it or were necessary from an engineering standpoint, and no recovery is to be allowed where an unreasonable expenditure has been made.

The fourteenth conclusion of law is set aside. Recovery may be had for the piling if it appears that the item of expense was not an unreasonable one for the committee to incur under the rules of law already stated. If that fact be found, it may be followed by a conclusion like the one now set aside.

The fifteenth conclusion of law is approved. So is the sixteenth. The gravel used for filling appears to have been absolutely necessary. No claim is made that the expense incurred was not reasonable. The only defense attempted is that the board could not delegate any power of the character exercised to the committee.

The seventeenth conclusion of law is approved, as are conclusions "a" to "f" inclusive.

The conclusions of law are embodied in and practically constitute the interlocutory judgment, and such judgment is approved, modified, and set aside to the extent indicated in the treatment of the conclusions of law.

We do not find any conclusion of law covering the facts found in the thirty-seventh finding. The principles of law governing the right of recovery, if any remains, have been set forth in this decision.

It was suggested on the argument that damages were duplicated in some of the claims on which recovery is sought. Nothing said herein is to be construed as authorizing any recovery beyond actual damages sustained.

*By the Court.*—So much of the interlocutory judgment as the plaintiff appeals from is affirmed. On the defendant's appeal the judgment is modified to the extent indicated in the opinion, and the case is remanded for further proceedings. Costs are allowed to the defendant.

The following opinion was filed October 6, 1914:

Per Curiam. Defendant moves for a rehearing on one point. By conclusion of law numbered $4\frac{1}{2}$, the printed case

shows that the court found that the contractor was entitled to recover damages "for the change in the method of constructing the railings." Under conclusion numbered 16, plaintiff was allowed to recover damages "on account of expansion joints." Both of these conclusions related to damages alleged to have been suffered on account of the construction of the parapet railings. The defendant admitted liability on account of the plans being defective in not providing for a sufficient number of expansion joints in these railings. This court assumed that this admission covered both items of alleged liability. This was a mistake. Conclusion 4½ was intended to cover a claim for damages on account of a change in the method of constructing the railings ordered by the engineer which required a more expensive mixture of materials and a higher class of workmanship than was required by the plans and specifications. The plaintiff requested the court to find that this change was authorized and ratified by the committee of the county board. The court refused to so find. We do not know whether the court thought the evidence did not warrant such a finding or that it was immaterial. A finding should be made to cover the matter. In reference to conclusion 4½ and the twenty-fourth finding of fact on which it is based, the following questions are left open for litigation: (1) Was the change ordered by the committee of the county board? (2) If not, then was the change such a one as the architect had the right to order under the rules of law defining his power to order changes as laid down in the former opinion? (3) The damages suffered by the contractor, if the necessary facts are found to entitle its assignee to recover.

No rehearing is necessary, and the motion therefor is denied. The former decision is modified in accordance with this opinion. No costs are allowed, except the plaintiff must pay the clerk's fee.

It is so ordered.